**FILED**
**MARCH 2, 2021**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 37148-4-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JASMINE JANEVA LEE SABOURIN, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Jasmine Sabourin appeals her convictions of second degree unlawful possession of a firearm (UPFA) and unlawful possession of a controlled substance (UPCS). She challenges the sufficiency of the evidence for both convictions, asserts prosecutorial misconduct during closing argument or, alternatively, ineffective assistance of counsel for not objecting. We affirm.

FACTS

On July 14, 2019, Klickitat County Deputy Sheriff Dwayne Matulovich was on routine patrol and found a campsite, consisting of a blue tent and a red tent, approximately 15 to 20 feet apart. He noticed vomit outside the blue tent and called out to whoever was inside the tent if they were alright. Not hearing a response and fearing

someone might have been poisoned, Deputy Matulovich unzipped the tent and peered inside. A man rolled over, said he was fine, and when asked, said his name was Cody Brock and that he was alone in the tent.

The deputy knew the name, knew that Mr. Brock was associated with Ms. Sabourin and was confident that both had warrants for their arrests. He returned to his patrol car, confirmed the two had warrants, and waited for backup to arrive. Once backup arrived, the deputy returned to the campsite and notified Mr. Brock he was under arrest.

In the process of arresting Mr. Brock, the deputy noticed a woman pretending to be asleep inside the blue tent. He surmised the woman was Jasmine Sabourin and placed her under arrest.

During the arrests, the deputy noticed a pair of pants with an empty holster located at the end of the bedroll. Ms. Sabourin asked the deputy to retrieve her cash inside a small storage bag attached to the tent. While retrieving the cash, the deputy saw what appeared to be a .9 mm cartridge.

Deputy Matulovich applied for and obtained a search warrant to search both tents for the presence of firearms. He knew that both occupants were convicted felons, and he had a reason to believe firearms would be found because of the empty holster and the .9 mm cartridge.

During his search of the blue tent, Deputy Matulovich saw drug paraphernalia. Based on this, he stopped the search and obtained a second warrant to search for controlled substances or drug paraphernalia.

A search of the blue tent revealed the presence of drug paraphernalia, firearm ammunition, and—under the bedroll between where the couple was sleeping—an unloaded .41 caliber revolver and five .41 caliber cartridges nearby. A search of the red tent revealed various documents belonging to Ms. Sabourin, a backpack, and a woman's jacket that contained a number of blue pills. In the backpack, the deputy found two .41 caliber rounds that matched the caliber of the revolver found in the blue tent.

Deputy Matulovich did not find any evidence of any person other than Mr. Brock or Ms. Sabourin living at the campsite. The Washington State Patrol Toxicology Laboratory tested the five pills found in the woman's jacket; four of the pills tested positive for Oxycontin. The State charge Ms. Sabourin with second degree UPFA and UPCS.

The case proceeded to trial and both parties presented their evidence. During closing argument, the deputy prosecutor described reasonable doubt to the jury:

> Now, my job is to prove this case beyond a reasonable doubt. And reasonable is a word that's thrown about in the law quite a bit and reasonable is decided by you. You know we say that what would a reasonable person do in these circumstances, in self-defense, would a

reasonable person knowing what the defendant know [sic], act in this manner. And, I would suggest for you to ask yourself two questions. Do I have a doubt? And, is it a reasonable doubt?

Report of Proceedings (RP) at 130.

The deputy prosecutor described constructive possession to the jury:

Instruction Number 11 it defines what possession is and possession can be actual or it can be constructive. And constructive possession occurs when there is no actual physical possession, but there is dominion and control over the item. An example would be you're a convicted felon, you're at work and from some circumstances that I can't tell you right now, police are looking in your locked closet and you've got a firearm. You're in constructive possession of that firearm. If you have a firearm at home as you sit here today, you have constructive possession of that firearm.

RP at 132-33. Neither of these comments were objected to by defense counsel.

The jury found Ms. Sabourin guilty of both counts, and the trial court later sentenced her.

Ms. Sabourin appealed. The appeal was submitted to this panel without oral argument.

## ANALYSIS

SUFFICIENCY OF THE EVIDENCE

Ms. Sabourin contends there was insufficient evidence to support her convictions. She argues the State failed to show she had dominion and control over the firearm or over the Oxycontin. We disagree.

4

In a criminal case, the State bears the burden of presenting sufficient evidence to prove every element of the crime charged beyond a reasonable doubt. *State v. Rattana Keo Phuong*, 174 Wn. App. 494, 502, 299 P.3d 37 (2013) (citing *Jackson v. Virginia*, 433 U.S. 307, 317-18, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). When reviewing a case for sufficiency of the evidence, this court views the evidence in the light most favorable to the State. *State v. Randhawa*, 133 Wn.2d 67, 73, 941 P.2d 661 (1997). We look at whether, viewed in this light, any reasonable trier of fact could have found, beyond a reasonable doubt, the essential elements of the crime charged were committed by the defendant. *Id.*

Possession can be either actual or constructive. *State v. Alvarez*, 105 Wn. App. 215, 221, 19 P.3d 485 (2001). Constructive possession is shown where the defendant had dominion and control over the contraband or the premises in which the contraband was found. *Id.* When establishing dominion and control, the totality of the circumstances must be considered. *Id.*

Here, the evidence showed that Ms. Sabourin had been sleeping in the blue tent with Mr. Brock and an unloaded .41 caliber revolver was under the bedroll between where both had slept. In addition, Deputy Matulovich found two .41 caliber rounds in the backpack in the red tent. The red tent was where the deputy found papers belonging to

5

Ms. Sabourin and a woman's jacket. There was no evidence anyone else lived in the campsite other than Ms. Sabourin and Mr. Brock. Viewing this evidence in the light most favorable to the State, a reasonable trier of fact could have found that the backpack and the .41 caliber cartridges belonged to Ms. Sabourin, and she had dominion and control of the .41 caliber revolver. We conclude the State presented sufficient evidence to sustain the jury's verdict on the first count.

The evidence of constructive possession was stronger for the second count. Deputy Matulovich found papers belonging to Ms. Sabourin in the red tent, and he also found four Oxycontin pills in a woman's jacket in that tent. Ms. Sabourin was the only woman at the campsite. Viewing this evidence in the light most favorable to the State, a reasonable trier of fact could have found that the red tent and the woman's jacket belonged to Ms. Sabourin, and that she had dominion and control over the Oxycontin pills inside the jacket. We conclude the State presented sufficient evidence to sustain the jury's verdict on the second count.

PROSECUTORIAL MISCONDUCT

Ms. Sabourin contends the prosecutor committed misconduct during closing arguments. In the alternative, she argues that her defense counsel was ineffective for failing to object to the comments. We disagree.

6

A defendant has a fundamental right to a fair trial under the Sixth and Fourteenth

Amendments to the United States Constitution and article I, section 22 of the Washington

Constitution. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 703, 286 P.3d 673

(2012). Prosecutorial misconduct can deprive the accused of a fair trial. *Id.* at 703-04. A

prosecutor commits misconduct by mischaracterizing the law to the jury. *State v. Evans*,

163 Wn. App. 635, 643, 260 P.3d 934 (2011).

A defendant arguing that prosecutorial misconduct violated his or her right to a fair

trial has the burden of showing the prosecutor's misconduct was both improper and

prejudicial in the context of the entire trial. *State v. Walker*, 182 Wn.2d 463, 477, 341

P.3d 976 (2015). And where a defendant raises the issue for the first time on appeal, the

defendant must show "'that the misconduct was so flagrant and ill intentioned that an

instruction would not have cured the prejudice.'" *Id.* at 477-78 (quoting *Glassman*, 175

Wn.2d at 704). "We do not focus on the prosecutor's subjective intent in committing

misconduct, but instead on whether the defendant received a fair trial in light of the

prejudice caused by the violation of existing prosecutorial standards and whether that

prejudice could have been cured with a timely objection." *Id.* at 478.

Here, Ms. Sabourin has not shown this for either of the purported instances of

misconduct. With respect to the first challenged conduct, Ms. Sabourin claims the

7

prosecutor lowered the burden of proof by equating reasonable doubt to the self-defense "reasonable person" standard. We disagree. While the prosecutor made an inarticulate reference to self-defense, he did not say anything that can be construed as suggesting that the State's burden of proof was anything other than "beyond a reasonable doubt." The prosecutor asked the jury to decide whether there was doubt and whether the doubt was reasonable. To the extent the prosecutor's inarticulate reference might imply anything else, his argument was not so flagrant or ill intentioned that a timely objection could not have cured the prejudice.

With respect to the second challenged conduct, the prosecutor gave the jury an example of constructive possession by describing an imaginary felon who had a firearm in a locked closet. She argues this ignores the components of "whether Sabourin knew of the presence of the contraband and gun, and . . . whether she could exclude other's access or not." Appellant's Br. at 16. Again we disagree. The prosecutor's example, perhaps incomplete, implied that the imaginary felon locked the gun in their own locker. If so, the example included the components of knowing there was a firearm in the closet and the ability to exclude others. Regardless, the lack of completeness in the prosecutor's description does not rise to the level of flagrant or ill intentioned.

No. 37148-4-III
*State v. Sabourin*

Finally, defense counsel's failure to object to remarks made by the prosecutor in closing argument will not support a claim of ineffective assistance of counsel where the remarks were neither improper nor prejudicial. *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011). Such is the case here.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____    _____
Siddoway, A.C.J.                    Staab, J.

9